IN THE
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

JASON MUSSELMAN,
     Petitioner,

v.

UNITED STATES OF AMERICA,
     Respondent.

Case No. 1:22-cr-10009-JEH-1/1:25-cv-01135-JEH

## Order

Now before the Court is Petitioner Jason Musselman's motion to vacate his guilty plea and sentence due to a claim of ineffective assistance of counsel, filed pursuant to 28 U.S.C. § 2255. For the reasons stated *infra*, the motion is denied.

### I

### A

On March 15, 2022, the grand jury charged Musselman in a 7-count indictment with: Count 1: Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), for conduct occurring from May 2011 to May 2013 in Toulon, Stark County, Illinois; Count 2: Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), for conduct occurring from April 2010 to February 2013; Count 3: Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), for conduct occurring from August 2010 to August 2012; Count 4: Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), for conduct occurring from December 2010 to November 2012; Count 5: Production of Child Pornography, in violation of 18 U.S.C. §§ 2251(a) and (e), for conduct occurring from October 2010 to September 2012; Count 6: Distribution of

Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), on December 21, 2021; and Count 7: Possession of Material Containing Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2), on January 19, 2022.

On November 17, 2022, Musselman entered into a plea agreement with the Government, wherein he agreed to plead guilty to Counts 1, 6, and 7. In the plea agreement, Musselman stipulated to the conduct underlying these counts. According to the stipulation of facts, Musselman admitted that in late 2021, the internet-based messaging service Kik reported to the National Center for Missing and Exploited Children that a user associated with his email address transmitted suspected child pornography using the service.

Law enforcement determined that the distributed files contained images of children engaging in sexually explicit conduct and traced the IP addresses involved to Musselman and the Stark County Ambulance Service where he worked. On January 19, 2022, agents executed a search warrant on Musselman's residence, person, vehicle, and electronic devices in Toulon, Illinois; during this search, they seized and examined his Apple iPhone, which contained over 200 pornographic images, including images of nude teenage girls identified as local residents. Many of these images were photographs of minors using a tanning bed at Musselman's home when they were unaware of being recorded; these images appeared to be stills excerpted from videos and included close-up stills of the juveniles' genitals, such as images where the minor's legs were splayed open to the camera or where images were zoomed in to focus even more closely on the exposed genitals. Some images consisted of collages with pornographic images of child victims placed next to clothed images of the same individuals or images of other victims.

Law enforcement identified and interviewed at least eight females depicted in these images, all of whom reported using Musselman's tanning bed as minors, not knowing they were being recorded, and confirmed their nude appearance in the photos; these victims, between the ages of 14 and 17 at the time, would testify the images depicted them nude as minors.

The search also revealed videos showing Musselman placing or adjusting a recording device to capture the tanning bed. Specifically, regarding Count 1, images located on his iPhone showed Minor Victim 1 engaged in sexually explicit conduct, particularly lascivious exhibition of the unclothed genitals, produced in his residence when the victim was under 16 years old. The iPhone further contained data from the Kik Messenger service, including messages and multiple images of child pornography exchanged via the internet on December 21, 2021, between Musselman's account and another user, featuring at least three images of prepubescent children under 12 engaged in sexually explicit conduct; Musselman could be identified as the user of the account that distributed these images. Additionally, the search revealed a 512 GB microSD card in Musselman's possession containing over 400 files of child pornography, including at least 250 images and 193 videos, such as videos of a 14-year-old engaged in sexually explicit conduct and an image of a man penetrating a prepubescent girl under 12 years old.

On January 19, 2022, Musselman possessed images of child pornography on his iPhone and SD card, including multiple images of prepubescent children under 12 engaged in sexually explicit conduct, and acknowledged that these images had traveled in or affected interstate or foreign commerce or were produced using materials that had done so. Musselman stipulated that all individuals identified as the subjects of images in his possession qualify as crime victims under federal law, and admitted to producing, distributing, and possessing child pornography as

3

charged in Counts 1, 6, and 7, agreeing these facts were true and formed the basis of his guilty plea.

At Musselman's change of plea hearing, he affirmed that the Government's recitation of these facts was correct, that they formed the basis for his guilty plea, and that he was pleading guilty because he was in fact guilty. Additionally, Musselman confirmed at that hearing that he understood the charges, their essential elements, the statutory maximum potential penalties, the possibility of consecutive sentences, the terms of the plea agreement and had discussed all this and the plea agreement with his attorney, with whom he was satisfied. He also confirmed that he understood the advisory nature of the Sentencing Guidelines, potential for upward or downward departures, and the inability to withdraw the guilty plea based on disagreement with the sentence or guideline calculations. Musselman affirmed that he and his counsel had discussed possible sentencing and that he understood he could not withdraw his plea if he disagreed with the sentence.

## B

Notwithstanding the colloquy at the change of plea hearing, Musselman thereafter filed a motion to withdraw his plea as to Count 1. In his motion to withdraw his plea to Count 1, Musselman argued that he was not legally guilty of "production of child pornography" because the images at issue, which were captured by a stationary, pre-positioned cell phone in his home, did not amount to "sexually explicit conduct" under the statute; he contended they merely showed individuals (including Minor Victim 1) nude while entering and exiting a tanning bed, with no close-up or zoomed images emphasizing the genitals, and thus his conduct amounted only to voyeurism rather than the creation of lascivious images intended to elicit a sexual response, citing a Fifth Circuit case, *United States v. Steen*,

634 F.3d 822 (5th Cir. 2011), and applying the so-called "Dost factors" to support that view.

The presiding judge at the time denied the motion, finding that there was no "fair and just reason" to withdraw the plea. The Court determined that, unlike in *Steen*, Musselman's conduct involved intentionally arranging to record minors with a device positioned to capture images of their genitals, then editing and zooming images to focus on lascivious exhibition, which is sufficient under applicable law. The Court further emphasized that Musselman had admitted both in open court and in his written plea agreement to creating such images and to their lascivious nature, and that the record established the plea was knowing, voluntary, and supported by an adequate factual basis, thereby rejecting Musselman's claim of legal innocence.

## C

The Revised Presentence Report (PSR) calculated Musselman's guideline range by first dividing the counts of conviction into two groups: Count 1, Production of Child Pornography, and a second group consisting of Counts 6 and 7, Distribution and Possession of Child Pornography. For the grouped counts (Counts 6 and 7), the base offense level under U.S.S.G. §2G2.2 was set at 22, reflecting the guideline for distribution of child pornography. Several specific offense characteristics were then applied to this group: 1) a two-level increase under §2G2.2(b)(2) because the materials included images of minors as young as approximately seven years old, establishing the presence of prepubescent minors; 2) a two-level enhancement under §2G2.2(b)(3)(F) based on the knowing distribution of child pornography; 3) a five-level increase under §2G2.2(b)(5) because the Petitioner engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, referencing at least eight separate incidents of production, which included the convicted count and others involving additional

identified victims; 4) a two-level increase under §2G2.2(b)(6) for use of a computer, specifically the Apple iPhone ProMax, in possessing and distributing the material; 5) and a five-level enhancement under §2G2.2(b)(7)(d) due to the number of images—Musselman was deemed responsible for 14,725 images of child pornography, factoring 250 images and 193 videos, with each video counted as 75 images. These combined adjustments resulted in an adjusted offense level of 38 for this group.

For Count 1, the base offense level under §2G2.1 was set at 32. A two-level enhancement under §2G2.1(b)(1)(B) was applied because the minor depicted was 14 years old, which falls within the 12-to-16-year age range. No other adjustments were made for this count, yielding an adjusted offense level of 34.

Pursuant to U.S.S.G. §3D1.4, the counts were assigned units (one unit each due to their seriousness), resulting in an increase of two levels above the higher adjusted offense level. The result was a combined adjusted offense level of 40. Because Musselman was found to be a repeat and dangerous sex offender against minors under U.S.S.G. §4B1.5(b)(1), a five-level enhancement was applied, raising the offense level to 45. Under the Guidelines, the total offense level is capped at 43, but the report reflected an offense level of 46 before acceptance adjustments. Three levels were then subtracted for acceptance of responsibility—two for acceptance and one for timely notification—resulting in a total offense level of 42. With a criminal history category I, the guideline range would be 360 months to life, but because the statutory maximums on the counts (Count 1: 15–30 years; Count 6: 5–20 years; Count 7: up to 10 years) limited the sentence, the guideline range was 360 to 720 months' imprisonment.

Defense counsel filed several objections to the PSR, which the Court resolved at sentencing.

Regarding Paragraph 58 – Two-Level Enhancement for Prepubescent Minors (U.S.S.G. 2G2.2(b)(2)): Defense objected to the two-level enhancement, asserting that the materials possessed did not involve images of minors as young as seven years old. At sentencing, defense counsel declined to argue further and chose to rely on the written objection. The Court overruled the objection, adopting the position of the probation officer and finding the two-level enhancement appropriate based on the reliable information provided in the reports and discovery.

Regarding Paragraph 61 – Two-Level Enhancement for Use of Computer (U.S.S.G. 2G2.2(b)(6)): Defense objected to this enhancement as being redundant and amounting to double-counting alongside the enhancement for distribution using a computer. At the hearing, defense counsel argued that almost all cases involve a computer, making the enhancement outdated. The Court found the argument reasonable but agreed with the probation officer and government that the enhancements address different conduct, and thus the objection was overruled. The Court noted it would consider counsel's argument when crafting the sentence but adopted the probation officer's position regarding the guideline calculation.

Regarding Paragraph 67 – Two-Level Enhancement for Age of Minor Victim (U.S.S.G. 2G2.1(b)(1)(B)): Defense objected, contending that all girls who used the tanning bed at the Petitioner's home drove themselves and so could reasonably have been presumed to be at least sixteen. Defense counsel declined to expand on the written objection at the hearing. The Court overruled the objection, finding that the written plea agreement acknowledged the victim was under sixteen and that the enhancement did not require proof of *mens rea* as to age, only the minor's actual age.

Regarding Paragraph 76 – Five-Level Enhancement for Repeat and Dangerous Sex Offender (U.S.S.G. 4B1.5(b)(1)): Defense objected to this enhancement as double-counting conduct already reflected in other enhancements and argued that multiple enhancements should not all be applied for closely related conduct. At the hearing, defense counsel reiterated these arguments, but the Court rejected them, adopting the probation officer and government's position that both enhancements are required by the Guidelines and address distinct aspects of the conduct as supported by circuit precedent.

Regarding Paragraph 81 – Recitation of Other Offense Behavior Not Part of Relevant Conduct: Defense objected to inclusion of this information, arguing that allegations had been addressed already by guideline calculations and should not affect sentencing length. The Court overruled the objection, agreeing with probation that the information was properly included for consideration under 18 U.S.C. § 3553(a) factors.

Regarding Paragraphs 82 and 83 – Allegations of Supplying Alcohol and Sexual Solicitation/Contact: Defense objected to inclusion of these uncharged allegations, denying that the conduct occurred. At the hearing, defense counsel stated he did not expect the information to impact guidelines but wanted the record to include the client's denial. The Court was prepared to hear evidence if the Government intended to rely on these statements for sentencing but, following a recess and further discussion, the parties agreed that the victims in question would not testify, and the objection was withdrawn.

Regarding Paragraph 143/144 – Supervised Release: Financial Information Access and Debt Limitation: Defense counsel objected to requirements that the Petitioner provide access to tax returns and not incur new debts or open new lines of credit over $200 without probation approval, arguing the case was not a financial crime and the requirement was burdensome and unnecessary. After

8

clarifying, defense counsel withdrew the objection regarding tax returns but maintained the objection regarding credit/debt. The Court overruled the objection, found the limitation reasonable in light of expected restitution, and indicated the condition could be revisited if it later proved problematic due to the Petitioner's farming occupation.

After overruling all these objections, the Court adopted the findings and Guideline calculations of the PSR in full.

Regarding other evidence presented for purposes of sentencing, several victim impact statements were introduced into the record, some of which were read into the record at the sentencing hearing. Multiple victims described severe emotional, psychological, and social consequences from the Petitioner's actions, emphasizing long-lasting harm. These victims recounted feelings of disgust, shame, anxiety, guilt, and trauma upon learning that nude images of themselves had been covertly recorded and held for years by someone they believed to be trustworthy. Many reported panic attacks, nausea, nightmares, embarrassment, and altered behavior, such as avoiding community events and fearing to encounter the Petitioner in public. Some detailed being re-victimized through the investigation process, having to identify themselves in explicit photographs and experiencing renewed trauma as adults.

The letters revealed distress over the impact on their families, with some noting their parents' or spouses' guilt and the strain placed on family relationships. Victims spoke of a loss of safety and trust, both towards individuals and within their own community, expressing renewed vigilance and overprotectiveness now that some are parents themselves. Several mentioned the community's reaction and support for the Petitioner as further traumatizing, compounding their sense of isolation and betrayal. The victims expressed fear that their images might further circulate, leading to persistent anxiety and despair about future

consequences. Despite these hardships, many also displayed courage in sharing their stories and advocating for prevention of similar harm to others, urging the Court to impose a sentence reflective of the seriousness of the offense and to safeguard potential future victims.

Defense counsel submitted letters of support for his client, as well as his client's statement in allocution, which was delivered in writing rather than orally. In these documents, letters from community members, family, and friends described Musselman as a dedicated and caring individual who has contributed significantly to his community. They expressed shock at his actions but emphasized his remorse and potential for rehabilitation. Many letters requested leniency, highlighting his positive impact on the community and the belief that he poses no threat.   His wife acknowledged the gravity of his actions but hoped for a future where their children can maintain a relationship with their father.

Musselman expressed deep remorse and responsibility for his actions involving the possession and distribution of illegal pornography, acknowledging the harm caused to the victims and their families.  He recognized the importance of laws protecting children and admitted his failure to uphold them, especially as a city council member.  Pre-trial he was engaged in self-reflection and therapy, aiming for rehabilitation and expressing a desire to use his experience to help others avoid similar mistakes.  He also attended therapy and Bible study, seeking to atone for his actions and hoping for a chance to return to his family and community.  He detailed his background, highlighting a supportive family and a history of community service, including roles in local government and emergency services.  Musselman admitted to poor judgment in visiting illegal websites and recording teenage girls without their knowledge, actions he said he deeply regrets.

Before imposing sentence, the Court stated that it had considered all the information presented, including the PSR, the Sentencing Guideline calculations,

the submitted commentaries, the arguments of counsel, and the allocution letter from the Petitioner, as well as the victim impact statements made during the hearing. The Court emphasized that it considered the factors set forth in 18 U.S.C. § 3553, aiming to impose a sentence that was sufficient but not greater than necessary to comply with the purposes of sentencing.

The Court noted that while Musselman had a history of good deeds and volunteerism in his community, as attested by numerous support letters, the nature and circumstances of the offense depicted a different person—someone who collected and maintained exploitive images of unknowing victims in his community, amassed hundreds of other exploitative images, and distributed images of child sexual abuse, some of which were obtained through his volunteer position in local law enforcement. The Court highlighted the seriousness of the offense, stating that it harmed not only the victims, who were minors, but also their families, the wider community, and the Petitioner's own family, including his parents, wife, and children. The Court noted the pain likely caused to these family members and the lasting impact on the victims, whom he recognized as courageous for coming to court to confront the Petitioner and share their stories.

The need to impose a sentence that reflected the seriousness of the offense, promoted respect for the law, and provided just punishment was stressed, as was the importance of adequate deterrence, given that Musselman's conduct spanned over a decade, affording him ample time to reconsider and desist from his behavior. The Court also observed that Musselman used his law enforcement role to further his criminal conduct. It acknowledged the real and profound harm experienced by the victims, remarking that the Musselman's actions effectively sentenced a group of young women to a lifetime of agony, worry, shame, and fear about whether their images might reemerge online, and imposed a parallel lifetime of guilt and regret upon their parents. The Court explained that all the

11

counts, including those related to possessing and distributing images of other unnamed victims, were aggravating, as they involved real people victimized for the Petitioner's gratification. It concluded that the lengthy period over which the conduct occurred, and its damaging effects warranted a significant sentence, which he viewed as sufficient but not greater than necessary to achieve the purposes mandated by law.

The Court then imposed a within-the-guidelines range sentence of 420 months' imprisonment, consisting of 300 months on Count 1, plus 120 months on Counts 6 and 7 (served concurrently to each other but consecutively to Count 1).

## II

Musselman's petition to vacate his conviction and sentence under 28 U.S.C. § 2255 is based primarily on claims of ineffective assistance of defense counsel in violation of the Sixth Amendment. His filing, including a supporting memorandum and personal affidavit, sets forth the following key arguments and reasoning.

First, regarding the plea stage, Musselman contends that his defense counsel failed to adequately inform him about the plea agreement, the consequences of his plea, and failed to negotiate on his behalf, resulting in his entry of an involuntary and unknowing guilty plea. He claims he was told to sign a plea agreement that contained errors, with counsel assuring him that "negotiations and changes" would occur during sentencing, which did not happen. He states he was led to believe he would receive a sentence closer to 15 years, but ultimately received a 35-year sentence. He further asserts he did not fully comprehend he would be remanded to custody immediately and that there were unresolved errors and unfavorable terms in the plea deal when he agreed to it. Musselman argues this constitutes deficient performance under *Strickland*'s standard, and that but for counsel's misadvising and omissions, he would have insisted on going to trial

instead of pleading guilty. He therefore seeks vacatur of his conviction or further proceedings based on an involuntary and uninformed plea.

Second, regarding the sentencing stage, Musselman argues defense counsel was ineffective by failing to adequately object to errors and enhancements in the PSR and failing to present meaningful arguments or evidence to support objections, resulting in a harsher sentence. Musselman notes that his attorney simply stood on written objections without advocating for them at the hearing, conceded key points, or gave perfunctory responses. He contends that had these objections been properly advanced, the guideline range and actual sentence could have been lower. Failure to actively challenge the PSR and argue objections, he asserts, fell below an objectively reasonable standard of representation and prejudiced him by resulting in a higher sentence.

Also directed at the sentencing stage, Musselman asserts his defense counsel failed to present important mitigating evidence at sentencing that would have supported a lower sentence. He contends these omissions included: 1) information about his voluntary participation in counseling and therapy; 2) his family responsibilities and positive community contributions; 3) his remorse (including being dissuaded from reading his prepared allocution, leading the court and prosecutor to perceive a lack of remorse); and 4) facts about the elapsed time since the charged conduct. He contends these failings deprived him of critical individualized sentencing consideration, and, given their significance, prejudice should be presumed or otherwise found.

He also presents an argument which is ostensibly directed at both the plea and sentencing stages. Specifically, Musselman argues that defense counsel did not adequately investigate, prepare for, or present a defense at any stage, including failing to investigate facts, consult or meet with the prosecutor, or pursue valid factual and legal arguments in Musselman's favor. Musselman claims

13

his lawyer failed to: 1) pursue corrections or changes to the plea agreement; 2) argue issues concerning the ages and identification of alleged victims; 3) respond to discrepancies about timeframes; 4) review or provide interviews or statements from victims; and 5) meet with the prosecutor to negotiate or prepare for sentencing. He argues that failure to conduct sufficient investigation and preparation is unreasonable under prevailing professional norms and led to adverse outcomes at both the plea and sentencing stages.

Finally, and for good measure, Musselman argues that even if each identified instance of ineffectiveness is deemed individually insufficient, the cumulative effect of all of defense counsel's errors deprived him of effective assistance of counsel and a fair proceeding. He points to the totality of the alleged above failings—during plea advisement, objection to PSR, substantive defense preparation, and presentation of mitigation—and asks the Court to consider their combined impact. He invokes precedent permitting relief where the aggregate of counsel's errors, even if individually harmless, together result in constitutional error.

The Government opposes Musselman's petition, arguing that he has failed to demonstrate either error or prejudice in his claims of ineffective assistance of counsel. It contends that Musselman's plea agreement was entered into knowingly and voluntarily, as evidenced by the plea colloquy where Musselman affirmed his understanding and satisfaction with his defense counsel's representation. The plea agreement, which Musselman signed, included a waiver of appeal and acknowledged the factual basis for his criminal conduct. The Government asserts that Musselman's claim of not being fully informed about the plea's disadvantages is unsupported, as the plea agreement provided a significant reduction in potential sentencing exposure by dismissing several counts that carried mandatory minimum sentences. Furthermore, the Government argues that Musselman's

14

defense counsel did file objections to the PSR and provided additional arguments during sentencing, contrary to Musselman's claims. The Government maintains that Musselman has not identified any specific evidence or arguments that would have altered the outcome of his sentencing. Additionally, the Government highlights that Musselman's criminal conduct spanned over a decade, involving the production and distribution of child pornography, which justified the sentence imposed. It concludes that Musselman's allegations are unsupported and fail to meet the burden of proving ineffective assistance of counsel, warranting the denial of his motion to vacate his sentence.

### III

### A

Pursuant to 28 U.S.C. § 2255(a), a federal prisoner may petition the court that imposed his sentence to vacate or set aside the conviction for ineffective assistance of counsel. Relief under § 2255 is available to petitioners who show flaws which are "jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995). Relief under § 2255 is reserved for "extraordinary" situations. *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996).

For claims of ineffective assistance of counsel, the petitioner must demonstrate deficient performance by counsel from which prejudice resulted. *Strickland v. Washington*, 466 U.S. 668 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Regarding deficient performance, in order "[t]o reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [a court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *Yu Tian Li v. United States*, 648 F.3d 524, 527–528 (7th Cir. 2011).

As it relates to prejudice, a petitioner must prove there was a "reasonable probability that, but for counsel's unprofessional errors" the outcome would have been different. *Strickland*, 466 U.S. at 694. A "reasonable probability" is a probability that is sufficient to "undermine confidence in the result." *Id.* In the context of prejudice from ineffective assistance of counsel in relationship to a guilty plea, a defendant must establish that, but for counsel's erroneous advice, the defendant would not have entered the guilty plea. *United States v. Woolley*, 123 F.3d 627, 635 (7th Cir. 1997), citing *McCleese v. United States*, 75 F.3d 1174, 1179 (7th Cir. 1996).

When a petitioner attacks his counsel's performance at sentencing, "only a significant increase in the sentence, attributable to counsel's error, constitutes prejudice." *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999), citing *Durrive v. United States*, 4 F.3d 548 (7th Cir. 1993), *abrogated by Glover v. United States*, 531 U.S. 198 (2001), 4F.3d 548, 551 (7th Cir. 1993). Moreover, "[i]t is well settled that, absent a fundamental miscarriage of justice, 'arguments based on the Sentencing Guidelines must be raised on direct appeal or not at all.'" *Allen*, 175 F.3d at 563, quoting *Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir.1996) (per curiam). "This rule is premised on the notion that '[a]djusting the offense level by two or three steps is exactly the routine decision that is supposed to be handled ... on direct appeal.'" *Id.,* quoting *Durrive*, 4 F.3d at 551. Prisoners cannot "circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel." *See Id.*, quoting *Durrive*, 4 F.3d at 550 and *Martin*, 109 F.3d at 1178 ("[T]he sort of increase produced by a few levels' difference in sentencing calculations cannot be raised indirectly on collateral attack by complaining about counsel's

16

work."). Accordingly, "strict adherence to the requirements of an ineffective assistance of counsel claim is required in order to ensure that only Sentencing Guidelines errors of constitutional proportion are considered on collateral review." *Id.*

Regarding evidence, the Seventh Circuit has consistently held that specific factual support is required for claims of ineffective assistance of counsel. *See United States v. Hodges*, 259 F.3d 655 (7th Cir. 2001) (emphasising the necessity of detailed allegations to substantiate claims of ineffective assistance). Specific factual allegations are also required to warrant an evidentiary hearing on a § 2255 petition. S*ee Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001). If a court finds that the existing record conclusively shows that the petitioner is not entitled to relief, an evidentiary hearing is unnecessary. *Id.*; *see* Rule Governing 2255 Proceedings 4(b).

Finally, determining whether to consider prejudice without first considering deficient performance is up to the court's discretion when examining the evidentiary record. *Hudson v. DeHaan*, 127 F.4th 1072, 1077 (7th Cir. 2025) (noting the state of the record counseled them to decide solely on the prejudice prong).

## B

Turning to Musselman's ineffective assistance of counsel claims as they relate to his guilty plea, even assuming his attorney did what he claims he did, and assuming again that those actions constituted deficient performance, Musselman cannot establish prejudice. Musselman's plea agreement clearly set forth the potential range of penalties for each of the counts to which he pleaded guilty. (D. 25 at ECF p. 6). That agreement also noted that if each of the maximum terms of imprisonment were run consecutively, he faced up to 60 years in prison. *Id.* at 7. Regarding the advisory Sentencing Guidelines, Musselman agreed that any sentence within the guideline range would be "reasonable." *Id.* at 14. And the agreement provided that "[t]he Court will remain free to make its own

17

independent determination of the applicable advisory guideline range . . . [and] will be free to impose whatever sentence it deems appropriate up to the statutory maximum, subject to the limitations of the United States Sentence Guidelines." *Id.* at 14-15. Finally, the agreement states:

> The defendant agrees and understands that he will not be allowed to withdraw his guilty plea because of an objection to the calculation of the Sentencing Guidelines, or to the Court's sentencing findings or rulings, or because he receives a sentence higher than that recommended under the Agreement.

*Id.* at 15.

At the change of plea hearing, the Court confirmed that Musselman understood all of this. For example, the Court advised him of the maximum penalty on each count, as well as the maximum penalty should those penalties be run consecutively to each other. (D. 63 at ECF pp. 7-9). Musselman stated that he understood all of this. *Id.* Likewise, the following exchange occurred:

> Q. Mr. Musselman, I won't be able to determine the advisory guideline for your case until a Presentence Report has been prepared and completed and you and Mr. Sullivan and the government have had an opportunity to challenge the reported facts and the application of the guidelines as recommended by the probation office. So a sentence ultimately imposed could be different from any estimate that Mr. Sullivan has given you. Do you understand that?
>
> A. Yes, I do, Your Honor.
>
> Q. In addition to that, after your initial advisory guideline range has been determined, I have the authority in some circumstances to depart upward or downward from that range, that is subject to the statutory mandatory minimums, of course, but I would, after examining other statutory factors; so that could result in the imposition of a sentence that could be greater or lesser than the

18

advisory guideline range subject to any mandatory minimums, of course. Do you understand that?

A. Yes, I do, Your Honor.

*Id.* at pp. 19-20.

Now, Musselman claims his defense counsel did not inform him adequately about the plea agreement or its consequences, did not negotiate enough on his behalf, and led him to believe his sentence would be closer to 15 years. These claims are belied by the plea agreement and his change of plea hearing, as set forth *supra*. First, as the Government notes, defense counsel negotiated an agreement with the Government which included the dismissal of several counts, some of which carried mandatory statutory minimum terms, and a recommendation by the Government that the guideline range should be reduced for acceptance of responsibility. Second, in both the plea agreement and at the change of plea hearing, it was made abundantly clear to Musselman that his sentence could be different than what he expected or any estimate his attorney may have given him and, if that turned out to be the case, he could not withdraw his plea because that happened.  Musselman stated on the record that he understood all of this.

Moreover, in Musselman's motion to withdraw his plea filed on May 11, 2023, almost six months after he entered his plea, almost three months after the initial PSR was provided to him, and less than two weeks before his sentencing hearing, Musselman raised none of these alleged issues as a basis to withdraw his plea. That initial PSR, provided to him months *before* he filed his motion to withdraw his plea, stated that his guideline imprisonment range was 720 months, well above the 15 years he now claims he expected at sentencing. (D. 30 at ECF p. 33). This too belies any claim that he misunderstood the consequences of his plea or the potential sentence he was facing.

19

"'Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury at the plea proceedings may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.'" *Bethel v. United States*, 458 F.3d 711, 719 (7th Cir. 2006), quoting *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005). That is precisely the case here. Musselman can only establish prejudice, *i.e.,* establish that he would not have pleaded guilty, if the Court relies on his assertions in his petition to vacate as opposed to his statements in the plea agreement and sworn statements at the change of plea hearing. This the Court will not do. Musselman is understandably unhappy with his lengthy sentence, but after-the-fact dissatisfaction with a sentence which he knew was a possibility at the time he pleaded guilty is not a basis to vacate his plea.

Musselman's other arguments related to the guilt phase of his case, such as claims that defense counsel failed to investigate, prepare for or present a defense, meet or consult with the prosecutor, or purse valid factual or legal arguments, can be disposed of based simply on the fact that they are bare accusations without specific facts. *See Hodges*, 259 F.3d at 655 (emphasizing the necessity of detailed allegations to substantiate claims of ineffective assistance). Musselman provides no specific accusations regarding *what* defense counsel failed to investigate and *what* factual or legal arguments he could have made. And Musselman's assertion that defense counsel failed to meet or consult with the prosecutor is belied by the very fact that his lawyer negotiated a plea agreement with the Government which resulted in the dismissal of several counts.

For all these reasons, Musselman fails to establish that he was prejudiced by any alleged deficient performance of his counsel as it relates to his plea of guilty.

**B**

Musselman's claims of ineffective assistance of counsel at the sentencing stage of the case fare no better.

First, Musselman's claim that defense counsel failed to adequately object to the PSR and failed to present meaningful arguments or evidence in support of such objections is just flat wrong. As set forth *supra*, defense counsel made several detailed objections to several enhancements in the PSR. He did so in writing and, for some, followed up with oral argument at sentencing. Given the stipulation of facts contained in the plea agreement, none of the objections defense counsel raised succeeded, but that does not mean defense counsel's arguments or evidence presented on the objections was inadequate. Indeed, the objections defense counsel made to the PSR stood little chance of success given the facts in this case, but defense counsel made those arguments, nonetheless. This is just the opposite of ineffective assistance of counsel; this is making the most of the little defense counsel had to work with here. Moreover, lawyers walk a fine line between making arguments on behalf of their clients which barely pass the blush test and those which are frivolous; making a frivolous argument at sentencing can cost a defendant the offense level reduction for acceptance of responsibility. *See United States v. Gordon*, 495 F.3d 427, 431 (7th Cir. 2007), citing *United States v. Romero*, 469 F.3d 1139, 1149 (7th Cir.2006), vacated on other grounds by *Romero v. United States*, 562 U.S. 1090 (2008); *United States v. Zehm*, 217 F.3d 506, 515–16 (7th Cir. 2000); U.S.S.G. § 3E1.1, cmt. n. 1(a).

Second, much like Musselman's claims at the plea stage, Musselman fails to specify *what* arguments his counsel should have made and did not, or what additional arguments or evidence his counsel should have presented on the objections he did raise. Again detailed allegations are necessary to substantiate claims of ineffective assistance, and none are made by Musselman here. *See United*

*States v. Hodges*, 259 F.3d 655 (7th Cir. 2001). Musselman's arguments regarding counsel's representation related to Guideline objections amount to nothing more than an attempt to evade the waiver of his right to appeal such issues in his plea agreement and, as already noted *supra*, "[p]risoners cannot 'circumvent the rule against raising Sentencing Guideline arguments in collateral proceedings by recasting their Guidelines arguments as claims of ineffective assistance of counsel.'" *See id.*, quoting *Durrive*, 4 F.3d at 550 and *Martin*, 109 F.3d at 1178. Even if defense counsel's representation was deficient in this regard as Musselman claims, there is no evidence in the record to cause this Court to believe any Guidelines error resulting from such deficient representation was of "constitutional proportion." *See Allen*, 175 F.3d at 563.

Third, Musselman's arguments that his defense counsel failed to present important mitigating evidence at sentencing is both belied by the record and unsupported by specific factual allegations. Contrary to Musselman's assertions, the sentencing transcript reveals that his voluntary participation in counseling and therapy, his family responsibilities, his community contributions, and his remorse were all put before and considered by the Court. To the extent that Musselman asserts his attorney should have presented *more* on these topics, he fails to specify what that "more" is or how it would have changed his sentence.

Finally, Musselman fails to establish any prejudice from his attorney dissuading him from reading his allocution, rather than providing it to the Court in writing. The Court clearly stated that it considered the written allocution when imposing sentence, and nothing in the record suggests the outcome would have been any different had Musselman read out-loud what he had written instead. Moreover, it is certainly within the realm of strategic decisions for counsel to advise a client to submit remarks in writing, rather than read them orally. For example, in the present case, several victims had spoken in open court at the

sentencing hearing in what was clearly an emotionally charged sentencing hearing. It could well be good advice for a defendant in such a circumstance to rely on his written statement, rather than risk things going off the rails during an oral statement. Regardless, there is no reason to believe that having the judge read the statement instead of having Musselman read it out-loud made the slightest difference to the outcome.

## C

Musselman's potpourri of other deficient performance claims, *i.e.,* failure to pursue changes to the plea agreement, failure to argue issues concerning the ages and identification of alleged victims, failure to respond about discrepancies in timeframes, failure to review interviews and victim statements, and failure to meet with the prosecutor to negotiate or prepare for sentencing, lack sufficient detail to warrant detailed discussion by the Court. Suffice it to say that given the stipulation of facts and Musselman's admission of guilt and agreement with that stipulation, the Court cannot see how any of these claimed errors would have changed the outcome of this case.

At bottom, Musselman pleaded guilty pursuant to a detailed stipulation of facts which subjected him to a very high guideline range. His lawyer negotiated a reasonable plea agreement for him, made several arguments at sentencing related to the Guidelines, presented evidence on § 3553(a) factors, and represented his client well under the circumstances. The record suggests that, even if Musselman's counsel had done or not had done all the things Musselman thinks he should or should not have done, Musselman still would not have gone to trial and his sentence would not have been lower than what was imposed.

## IV

For the reasons stated *supra*, the Petitioner's motion to vacate is denied without an evidentiary hearing. *See Martin v. United States*, 789 F.3d 703, 706 (7th

23

Cir. 2015) (holding no hearing is needed if the record conclusively shows the prisoner is entitled to no relief). Second, the Court finds that the petitioner has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), and that reasonable jurists would not find the Court's assessment of the constitutional claims debatable or wrong. Therefore, a certificate of appealability is denied. See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

*It is so ordered.*

Entered on Click or tap to enter a date.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE